IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| E.F.E.L., | ) | |
| | ) | |
| Petitioner, | ) | Case No. 26-cv-02507 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| | ) | |
| KRISTI NOEM, Secretary of Homeland Security, | ) | |
| ROBERT F. KENNEDY, JR., Secretary of Health | ) | |
| and Human Services, ANGIE SALAZAR, Acting | ) | |
| Director of the Office of Refugee Resettlement, | ) | |
| DAVID SINSKI, Chief Executive and Vision | ) | |
| Officer of Heartland Human Care Services, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner E.F.E.L., a minor, brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that Respondents violated his due process rights and the Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008. For the following reasons, the Court grants his habeas petition [1].

**I.      Background**

**a.   Legal Framework**

The Homeland Security Act of 2002 (the "HSA") confers responsibility for the care and placement of "unaccompanied alien children" ("UACs") from the Department of Homeland Security ("DHS") to the Office of Refugee Resettlement ("ORR"), a division within the Department of Health and Human Services. ("HHS"). 6 U.S.C. §§ 279(a), (b)(1)(A), (g)(2).

The HSA defines a UAC as a child who:

1. Has no lawful immigration status in the United States;
2. Has not attained 18 years of age; and
3. With respect to whom:
   a. There is no parent or legal guardian in the United States; or

      b.  No parent or legal guardian in the United States is available to provide care and physical custody.

6 U.S.C. § 279(g)(2). When a federal agency such as DHS takes custody of a UAC, federal law requires that agency to transfer custody of the minor to ORR within 7 hours. 8 U.S.C. § 1232(b). Once a minor is in ORR custody, removal proceedings typically begin before an immigration judge to determine whether the UAC should be removed from the country. *See* 8 U.S.C. § 1232(a)(5)(D). UACs may be held in more restrictive custody if the UAC poses a danger or presents a flight risk. *See* 8 U.S.C. § 1232(c)(2)(A). Absent these circumstances, the UAC need not remain in ORR custody. Rather, ORR is tasked with "making placement determinations for all unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C.A. § 279(b)(1)(A). The TVPRA requires that ORR "promptly" place a UAC "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

ORR may release a UAC to a "sponsor" who already lives in the U.S. after determining that the sponsor "is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A). Before doing so, ORR must verify "the custodian's identity and relationship to the child, if any, as well as [make] an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* If placement with a sponsor is not appropriate because the potential sponsor is unsuitable, or because the minor is dangerous, ORR maintains custody of the minor in a facility pending resolution of the removal proceedings. *Id.*; *see also* 6 U.S.C. § 279(b)(2)(B).

In April 2024, ORR promulgated the Unaccompanied Children Program Foundational Rule ("Foundational Rule," codified at 45 C.F.R. § 410). The Foundational Rule establishes the process through which ORR determines if a potential sponsor is suitable to take custody of a UAC. Potential sponsors are required to complete an application package which must contain proof of address, proof of income, sponsor-child relationship, and criminal history documents. 45 C.F.R. § 410.1202(a); ORR

UACB Policy Guide ("UAC Policy Guide"), §§ 2.2.4-5, available at https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide. ORR is required to verify the sponsor's "identity, physical environment of the sponsor's home, and relationship to the unaccompanied child, if any" before releasing the UAC. 45 C.F.R. § 410.1202(b).

**b. Facts**

Petitioner is 15 years old and a citizen of Guatemala. He entered the U.S. in January 2025, unaccompanied by an adult, when he was 14. Federal officials captured Petitioner upon his entry into the U.S. and deemed him to be a UAC. He was transferred to the custody of ORR as required by law.

Petitioner's brother was already present within the United States and promptly applied to serve as Petitioner's sponsor. In the course of the sponsor application process, Petitioner's brother provided all documents that were required at that time, underwent a background check, and submitted to a DNA analysis proving his fraternal relationship with Petitioner. After he was deemed a qualified sponsor by ORR in March 2025, Petitioner was released to the custody of his brother and resided with him in Tennessee. Petitioner's brother provided for him physically and mentally, including ensuring that Petitioner attended school.

On December 1, 2025, immigration enforcement agents approached Petitioner while he was at a gas station near his home with an acquaintance. Petitioner produced documentation for immigration agents known as a "Verification of Release" ("VOR") card, proving that he had been processed through ORR and was lawfully released into his brother's custody. Nevertheless, immigration agents detained Petitioner and transferred him back into ORR custody. He was first placed with Heartland Human Care Services' facility in Chicago, Illinois, before being transferred to the Board of Child Care-Caminos West in Mechanicsburg, Pennsylvania, where he remains today.

Petitioner's brother attempted to submit another sponsorship application; however, he was unable to complete the application due to a change in the Foundational Rule implemented in March

2025, days after Petitioner was released to the care of his brother. Before the change, documentation of the sponsor's identity did not necessarily need to come from the U.S; the Foundational Rule previously allowed ORR "consult with the issuing agency (e.g., consulate or embassy) of the sponsor's identity documentation to verify the validity of the sponsor identity document presented." 45 C.F.R. § 410.1202(b). Now, the Foundational Rule requires a potential sponsor to present an identity document issued by the U.S., rather than a foreign government. Petitioner's brother is unable to satisfy this policy.

## II.     Discussion

As a threshold matter, because Petitioner was in ORR custody in Illinois when he filed his Petition, this Court may properly hear the petition, *see Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)). Petitioner's transfer to Pennsylvania did not deprive this Court of jurisdiction to hear his petition. *In re Hall*, 988 F.3d 376 (7th Cir. 2021).

### A.  Petitioner's Detention Violates Due Process

Respondents provide zero justification for why Petitioner was detained by immigration officials in the first place. Petitioner was initially apprehended upon entry into the U.S. in January 2025. Federal agents determined at that time that Petitioner has "no lawful immigration status in the United States," a requirement to be deemed a UAC. Petitioner was transferred to ORR as required by law, pending a decision on his removability. ORR determined that Petitioner posed neither a danger nor a flight risk and should not be detained. Instead, the "least restrictive setting" was for Petitioner to be placed in the care of a sponsor, in this case his brother.

There is no evidence that those circumstances have changed. Respondents opine euphemistically that Petitioner "re-entered ORR custody" following an encounter with immigration agents without providing the basis of that rearrest. But the agents' sole reason for rearresting Petitioner could not be because they suspected him to be subject to removal. Petitioner was already

detained for lack of lawful immigration status upon being taken into ORR custody in January 2025. The unreasonableness of the rearrest is even more egregious given the fact that Petitioner provided a VOR card as proof that he was already processed through ORR and resided with a vetted sponsor.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well-established law that "where one has been released … he cannot be rearrested … on the same charge on which he was originally arrested." *Williams v. Dart*, 967 F.3d 625, 635. This applies to undocumented foreign nationals. *Carlson v. Landon*, 342 U.S. 524, 546 (1952) (reversing denial of habeas corpus to foreign national released on bail then rearrested under original warrant). Due process protections also extend to foreign nationals regardless of whether their presence in the U.S. is lawful. *Plyler v. Doe*, 457 U.S. 202, 210 (1982).

To determine what due process requires, courts consider (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319 (1976); *see also A.N.P.S. v. Salazar*, 2025 WL 3707333 at *4.

Although Petitioner is always in some form of custody as a minor, he retains a strong interest in being free from unnecessary government interference with his liberty. *See Schall v. Martin*, 467 U.S. 253, 265, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). This is especially true where Petitioner has been removed from his family, his school, and his community "to be shipped across the country … and held for an indefinite period." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Due process requires protections to ensure that Petitioner is not "erroneously taken away from his family, transported across the country,

and processed no differently from a UAC first entering the country." *Saravia*, 280 F. Supp. 3d at 1197. To prevent that risk, Petitioner and his sponsor must receive notice of the basis for the rearrest and an opportunity to be heard. They must be provided a meaningful opportunity to rebut the factual basis for Petitioner's rearrest and detention. Any burden that the government faces as a result of providing these procedural protections does not outweigh the welfare of a child—indeed, Respondents here claim that the reason Petitioner is being held in custody is for his own safety and wellbeing, an assertion antithetical to their actions.

This issue was addressed in *Saravia v. Sessions*. That case arose when Immigration Customs and Enforcement ("ICE") executed "Operation Matador" in 2017, targeting undocumented immigrants in New York with alleged gang affiliations. In *Saravia*, the court found that the petitioner's due process rights were violated where ICE rearrested him without showing any change in the circumstances surrounding his initial arrest. The Court agrees with Judge Chhabria's well-reasoned decision in *Saravia* and finds it persuasive in adjudicating the present petition.

As Judge Chhabria succinctly explained:

> Given the nature of the liberty deprivation involved, a minor previously placed with a sponsor by ORR cannot be rearrested solely on the ground that he is subject to removal proceedings. That the minor was subject to removal proceedings formed the basis of his first arrest; after DHS transferred the minor to ORR custody, as the TVPRA requires DHS to do on every occasion in which an unaccompanied minor is arrested, ORR determined that the appropriate place for the minor was *not* in federal custody. If DHS could, the day after a minor was released … arrest the minor on the same basis and restart the process, the TVPRA's instruction to place the minor in the least restrictive appropriate setting would mean little.

*Saravia*, 280 F. Supp. 3d at 1196 (citing *United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971).

Courts in this District have adopted the same reasoning. In *A.N.P.S. v. Salazar*, the court found that the rearrest of the minor petitioner violated his procedural due process rights when they rearrested him after having previously released him upon finding that he presented no risk of danger or flight. 2025 WL 3707333, at *5 (N.D. Ill. Dec. 22, 2025) (Rowland, J.). As that court noted, "[p]rocedural due process precludes Respondents from simply changing their mind" about the

petitioner's current circumstances "with no reason, explanation, or notice." *Id.* at \*7. This Court finds no reason to depart from that reasoning here.

The Court therefore finds that the rearrest and detention of Petitioner, without showing changed circumstances from his prior release and without a fair hearing, is a violation of Petitioner's due process rights.

### B. The TVPRA Does Not Mandate Petitioners' Sponsor to Reapply

Even assuming that immigration agents' detention of Petitioner and referral back to ORR were proper—which they were not—Respondents still fail to establish why Petitioner should not be released back to his previous sponsor, whom ORR already determined is suitable to care for Petitioner.

The TVPRA provides:

> [A]n unaccompanied alien child may not be placed with a person or entity unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being. Such determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child.

8 U.S.C.A. § 1232(c)(3)(A).

Again, the ORR already determined in January 2025 that the "least restrictive setting that is in the best interest of the child" is placement with his brother. Petitioner's sponsor was thoroughly evaluated by ORR as part of that process. Nevertheless, Respondents presuppose that "[i]n each referral, a potential sponsor must complete a sponsorship application." By characterizing immigration agents' detention of Petitioner in December 2025 as a new "referral," Respondents contend that Petitioner's brother must *reapply* for sponsorship, despite the fact that he provided all the required information in his sponsor application (including DNA testing, a background check, and acceptable verification of his identity) under the previous Foundational Rule. Based on the record, it seems as though the *only* requirement he cannot satisfy is to produce a U.S.-issued identification document.

Respondents do not cite to any authority requiring a new sponsor application every time a UAC reenters ORR custody. That's because there is absolutely nothing in the TVPRA that requires ORR to conduct the *same* evaluation a *second* time for the *same* sponsor. The court came to the same conclusion in *Saravia*: "According to the government, the TVPRA requires ORR to conduct a reassessment of the sponsor's fitness to care for the child once the child is returned to ORR custody. But it's not at all clear why this is so … [t]he status quo is the decision ORR made previously, which is that the minor should be placed with the sponsor, whom ORR already deemed suitable." *Saravia*, 280 F. Supp. 3d 1198. Respondents suggest that a second application is necessary because "sponsor information can readily change." (Dkt. 26) at *3. The implication is that the sponsor may no longer be suitable to provide for Petitioner despite being a qualified sponsor when Petitioner was initially released (and, for that matter, at the time that Petitioner was re-arrested). However, the ORR has existing procedures, including coordination with state welfare agencies, to address those concerns. Adopting Respondents' argument would mean that when the government rearrests a previously-released UAC and transfers him to ORR, "the sponsor [has] to begin the process all over again," which "subject[s] persons … to [a] procedural house of mirrors, where one can only secure illusory freedom from custody, and any freedom is constantly subject to the impermanent whims of the government." *A.N.P.S. v. Salazar*, 2025 WL 3707333 at *6. This flagrantly contradicts to the purpose of the TVPRA, which is to provide extra protections to unaccompanied minors, a particularly vulnerable group of individuals whose best interests are paramount to the government's decisionmaking.

Because ORR already fulfilled its duty to place Petitioner in a setting that is in his best interest, the TVPRA mandates that ORR "release [the] child from its custody without unnecessary delay." *Id.* at § 410.1201. Respondents brazenly accuse Petitioner of "attempt[ing] to short-circuit [the ORR] process by going to district court and filing this habeas petition to have the court make its own 'best

interests' determination." It is the opposite: Respondents attempt to short-circuit the ORR process by rearresting Petitioner without justification and requiring his brother to file another sponsor application under new rules requiring U.S.-issued identification. Respondents ask this Court to sanction their attempt to override ORR's previous determination that Petitioner's brother was qualified to be his sponsor. The Court emphasizes that TVPRA regulations expressly prohibit sponsor denials based solely on the immigration status of the sponsor. 45 C.F.R. § 410.1201(b). Respondents' method of rearresting a UAC whose sponsor cannot produce U.S.-issued identification documents appears to be a gross weaponization of the ORR process to further this administration's immigration enforcement efforts.

### C. Relief Under Habeas Corpus is Proper

The Court may issue a writ of habeas corpus granting a petitioner's release from government custody when such custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. All people, including undocumented aliens, may present due process challenges to their detentions, and federal courts have jurisdiction over their petitions. *Zadvydas*, 533 U.S. at 687.

While Respondents argue that Petitioner has not exhausted administrative remedies, they admit that § 2241 does not require exhaustion. (Dkt. 16) at *12. Instead, where Congress has not imposed a statutory exhaustion requirement, courts can exercise "sound judicial discretion" to excuse exhaustion, including in cases when "requiring exhaustion … causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action." *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (internal citation omitted)). Courts have "broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). In its discretion, the Court will not deny Petitioner's habeas petition on exhaustion grounds, especially in light of the fact that Petitioner has been forcibly removed from his household and school without due process of law.

**CONCLUSION**

The U.S. government separated a child from his family and has kept him hundreds of miles away from his brother for over four months. He was arrested without reason and without being afforded due process, despite ORR's determination, after thorough vetting, that his brother was a suitable sponsor. He is alone and needlessly suffering physically and mentally with no legal justification. His continued detention is indefensible.

For the foregoing reasons, the Court grants Petitioner's petition for writ of habeas corpus. [1]. Within 24 hours of entry of this order, the parties are to identify a time and place at which Petitioner's counsel can retrieve Petitioner from ORR custody. Within 72 hours of entry of this order, Petitioner's counsel must effectuate Petitioner's return to the custody of his ORR-designated sponsor, his brother. Within 5 days of entry this order, the parties are to file a joint status report indicating that Petitioner has been released into his brother's custody.

**IT IS SO ORDERED.**

_____

Sharon Johnson Coleman
United States District Judge

DATED: 4/17/2026